UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Michigan Division - Monument Builders
of North America, *et al.*,

       Plaintiffs,

v.                             Case No. 2:05-CV-74721

Michigan Cemetery Association, *et al.,*       Honorable Sean F. Cox

       Defendants.

_____/

## OPINION & ORDER

On December 13, 2005, Plaintiffs filed this purported class action, asserting antitrust claims under the Sherman Act, 15 U.S.C. §1 *et seq*., and state law claims under Michigan's Prepaid Funeral and Cemetery Sales Act, M.C.L. §328.225.  Plaintiffs filed a Second Amended Complaint on August 30, 2006.  The matter is currently before the Court on multiple motions to dismiss brought by Defendants pursuant to FED. R. CIV. P. 12(b)(6).  The parties have fully briefed the issues and the Court heard oral argument on October 12, 2006.  For the reasons set forth below, the Court shall **grant** Defendants' motions and dismiss Plaintiffs' complaint.

## BACKGROUND

In this action, a trade association of monument dealers proposes to represent a plaintiff class of independent monument sellers in Michigan against a defendant class of all cemeteries located in Michigan.  In addition, three individual plaintiffs bring the same claims on their own behalf against 21 named defendants.  This Court has jurisdiction over this case based upon federal question jurisdiction, 28 U. S. C. §1331.  The federal claims in this action are antitrust

1

claims under the Sherman Act, in which Plaintiffs allege that Defendants violated the Act by
engaging in illegal tying arrangements and by conspiring to do so.  Plaintiffs also assert state law
claims based upon a Michigan statute relating to the provision of cemetery and funeral services.

A.    The Parties

There are four named Plaintiffs in the Second Amended Complaint: 1) Michigan Division
- Monument Builders of North America ("Michigan Monument Builders"); 2) DWWD, Inc.
d/b/a Simpson Granite ("Simpson Granite"); 3) Jackson Monuments Works, LLC ("Jackson
Monuments"); and 4) Arnet's Inc. ("Arnets").  Plaintiff Michigan Monument Builders is a
nonprofit trade association whose members include monument retailers located in Michigan.  It
is not suing in its own capacity, but rather, is suing in a representative capacity on behalf of more
than 45 independent monument retailers located in Michigan in this purported class action.  The
remaining 3 Plaintiffs (Simpson Granite, Jackson Monuments, and Arnets) are individual
monument retailers who assert claims on their own behalf against the named Defendants.

The following 20 entities, that collectively own or operate approximately 50 cemeteries in
various counties throughout Michigan, are named as individual Defendants in this action:

1) Detroit Memorial Park Association, which owns or operates 2 cemeteries;
2) Fenton Corporation;
3) Crestwood Memorial Cemetery, Inc.;
4) Dawn Memorial Estates Cemetery, Inc.;
5) Lovedale Memorial Cemetery, Inc.;
6) Tyrone Memory Gardens, Inc.;
7) Mikocem, LLC, which owns or operates 27 cemeteries;
8) Mt. Elliot Cemetery Association, which owns or operates 5 cemeteries;
9) Westlawn Cemetery Association;
10) Arborcrest Memorial Cemetery;
11) Chapel Hill Associates, Inc.,
12) Elmwood Cemetery Association (Detroit);
13) Evergreen Cemetery Association;

2

      14) Glen Eden Lutheran Memorial Park (Livonia);
      15) Greenwood Cemetery Association of Vernon, Michigan;
      16) Hillcrest Memorial Gardens Association;
      17) Knollwood Memorial Park Cemetery Association;
      18) Michigan Memorial Park, Inc.;
      19) Oakridge Cemetery (Flat Rock); and
      20) White Chapel Memorial Association.

Plaintiffs have also named the Michigan Cemetery Association, a nonprofit corporation

comprised of members which own or operate cemeteries in Michigan, as a Defendant.  Thus,

there are 21 named Defendants.  Plaintiffs claim that the Michigan Cemetery Association is

"being sued as a co-conspirator in fostering and aiding and abetting the anticompetitive and

predatory practices" alleged in the complaint.

      Plaintiffs identify the purported defendant class as "all cemeteries located in the State of

Michigan and entities that control cemeteries in the State of Michigan."  (2d Am. Compl. at ¶

114).

B.    <u>Plaintiffs' Claims</u>

      Although it contains eight separate counts, Plaintiffs's Second Amended Complaint

essentially alleges four claims:

      1.      "<u>Sherman Act, Section 1 Illegal Tying Arrangement</u>:"

      In Count I, the three individual Plaintiffs bring this claim against the named Defendants.

In addition, in Count V, Michigan Monument Builders, as class representative, brings this claim

against all named Defendants and the Defendant Class.

      In this claim, Plaintiffs allege that Defendants have engaged in 3 different kinds of illegal

"tying[1] arrangements"in violation of Section 1 of the Sherman Act: 1) burial plots are tied such that customers who want to buy a plot in a given cemetery must also buy a monument (tombstone, etc.) from the cemetery; 2) burial plots are tied such that customers who want to buy them must also buy installation services for the monument from the cemetery; and 3) burial plots are tied such that consumers who want to buy them must also buy other monument-related services from the cemetery.  Thus, Plaintiffs allege that burial plots are the "tying product" and monuments and related items, and installation service for same, are the "tied products."  (Compl. at ¶ 34).

Plaintiffs allege that because of the uniqueness of land, each cemetery constitutes a unique and separate market.  (Compl. at ¶ 28).  Plaintiffs allege that "the relevant geographic market is each individual cemetery in the State of Michigan."  (*Id*.).

2.      "Sherman Act, Section I Conspiracy to Restrain Competition and Monopolize Trade:"

In Count II, the three individual Plaintiffs bring this claim against the named Defendants. In addition, in Count VI, the class representative brings this claim against all named Defendants and the Defendant Class.

In this claim, Plaintiffs claim that Defendants have engaged in an unlawful continuing contract, combination and conspiracy to unreasonably restrain trade and monopolize trade in the defined market.  Plaintiffs allege that Defendants have engaged in or have aided or abetted in

---

[1]As will be explained in greater detail in the analysis section, "[t]ying is a form of marketing in which a seller insists on selling two distinct products or services as a package.  A supermarket that will sell flour to consumers only if they will also buy sugar is engaged in tying. Flour is referred to as the *tying* product, sugar as the *tied* product." *Jefferson Parish Hosp. Dist. No. 2 v. Hyde*, 466 U.S. 2, 33 (1984).

4

illegal tying arrangements in order to force customers who want to buy a burial plot in a given

cemetery to buy their monuments and related items from the cemetery and to have the cemetery

install them as well.

     3.      "<u>Sherman Act, Section 2 Conspiracy to Restrain Trade and/or Attempt to Monopolize</u>:"

In Count III, the three individual Plaintiffs bring this claim against the named Defendants.

In addition, in Count VII, the class representative brings this claim against all named Defendants

and the Defendant Class.

In this claim, Plaintiffs assert that Defendants have conspired to monopolize the defined

relevant product and geographic market in violation of Section 2 of the Sherman Act, based on

the same conduct that Plaintiffs believe supports their other conspiracy claim.

     4.      "<u>Violation of the Michigan Prepaid Funeral and Cemetery Sales Act</u>:"

In Count VI, the three individual Plaintiffs bring this claim against all named Defendants.

In Count VIII, the class representative brings this claim against all named Defendants and the

Defendant Class.  The Michigan Prepaid Funeral and Cemetery Sales Act, M.C.L. §328.225 sets

forth certain restrictions on selling burial plots and related services.  Plaintiffs assert that

Defendants have violated that statute.

C.     <u>The Pending Motions To Dismiss</u>

Collectively, the 21 named Defendants in this action have filed more than 20 motions

seeking to dismiss Plaintiffs' Complaint pursuant to FED. R. CIV. P. 12(b)(6).  Most of those

motions, however, rely on and adopt the motions and briefs filed by other Defendants.  In

addition, because the Defendants filed their motions to dismiss after Plaintiffs had filed their

First Amended Complaint, but before Plaintiffs had filed their Second Amended Complaint,

Defendants recently filed motions that simply clarify that they intend to rely on their previous

briefing.  All of the pending motions to dismiss are ready for decision.

Because Defendants' Joint Motion to Dismiss ("the Joint Motion") contains grounds for

dismissal asserted by all Defendants, and if granted it would render moot the additional grounds

raised in the other briefs, the issues addressed in it will be addressed first.

Standard of Review

Defendants bring their motions to dismiss pursuant to FED. R. CIV. P. 12(b)(6).  In

assessing a motion to dismiss for failure to state a claim under Rule 12(b)(6), the Court must

treat all well-pleaded allegations in the complaint as true.  *Moon v. Harrison Piping Supply, et

al.*, __ F.3d __ (6th Cir. Sept. 28, 2006)(citing *Kostrzewa v. City of Troy*, 247 F.3d 633, 638 (6th

Cir. 2001)).  Dismissal is only proper if it appears beyond doubt that the plaintiff can prove no

set of facts in support of his claims that would entitle him to relief.  *Id.*  A complaint will survive

a motion to dismiss if it "contain[s] either direct or inferential allegations with respect to all

material elements necessary to sustain a recovery under some viable legal theory."  *Performance

Contracting, Inc. v. Seaboard Sur. Co.*, 163 F.3d 366, 369 (6th Cir. 1998).

"The essential elements of a private antitrust claim must be alleged in more than vague

and conclusory terms to prevent dismissal of the complaint on a defendant's 12(b)(6) motion."

*Foundation for Interior Design Educ. Research v. Savannah College of Art & Science*, 244 F.3d

521, 530 (6th Cir. 2001)(citing *Crane & Shovel Sales Corp. v. Bucyrus-Erie Co.,* 854 F.2d 802,

805 (6th Cir. 1988)).  "While the pleading standard under the federal rules is very liberal, see

Fed. R. Civ. P. 8, 'the price of entry, even to discovery, is for the plaintiff to allege a factual

6

predicate concrete enough to warrant further proceedings, which may be costly and burdensome.'" *Id.*

## ANALYSIS

Plaintiffs allege: 1) illegal tying arrangements in violation of Section 1 of the Sherman Act; and 2) a conspiracy to restrain trade and competition in violation of Sections 1 & 2 of the Sherman Act.[2]  Both parties recognize that Plaintiffs' "tying claims are at the heart of [P]laintiffs' antitrust claims" in this action.  (Pls.' 5/17/05 Resp. Br. to Joint Motion to Dismiss at 2).  As explained below, a tying arrangement can violate the Sherman Act under certain circumstances.

"Tying is a form of marketing in which a seller insists on selling two distinct products or services as a package.  A supermarket that will sell flour to consumers only if they will also buy sugar is engaged in tying.  Flour is referred to as the *tying* product, sugar as the *tied* product." *Jefferson Parish Hosp. Dist. No. 2 v. Hyde*, 466 U.S. 2, 33 (1984).  As the Supreme Court has explained, however, "there is nothing inherently anticompetitive about packaged sales." *Id.* at 25.  Only when consumers are forced to purchase a tied product with a tying product, *due to a defendant's substantial market power in the tying product market*, are the protections of the antitrust laws triggered.

In other words, tying is economically harmful only "where power in the market for the tying product is used to create *additional* market power in the market for the *tied* product." *Id.* at 36.  "The antitrust law is properly concerned with tying when, for example, the flour monopolist

---

[2]Section 1 of the Sherman Act provides in relevant part: "Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal." 15 U.S.C. § 1.  Section 2 of the Sherman Act proscribes monopolization, attempted monopolization and conspiracy to monopolize. *NicSand, Inc. v. 3M Co.*, 457 F.3d 534, 542 (6th Cir. 2006).

threatens to use its market power to acquire additional power in the sugar market, perhaps by driving out competing sellers of sugar, or by making it more difficult for new sellers of sugar to enter the sugar market." *Id*. But such an extension of market power poses no threat unless the two markets in question and the nature of the two products tied satisfy certain threshold criteria. *Id*. at 37.

The first threshold criteria for a valid tying claim is that the defendant "must have power in the tying product market." *Id*. at 37. "Absent such power tying cannot conceivably have any adverse impact in the tied-product market, and can be only pro-competitive in the tying product market." *Id*. Thus, "[i]f the seller of flour has no market power over flour, it will gain none by insisting that its buyers take some sugar as well." *Id.* at 38.

The parties agree that the essential elements of a valid tying claim, as set forth in *Compuware Corp. v. International Business Machines*, 259 F.Supp.2d 597, 601 (E.D. Mich. 2002), include that the defendants have sufficient economic power in the relevant tying market to restrain appreciably competition in the tied market.[3] In addition, it is undisputed that one of the essential elements to both of Plaintiffs' conspiracy claims under the Sherman Act is that the conspiracy produce adverse, anticompetitive effects within the relevant product and geographic

---

[3]Various opinions discussing tying claims reference a "per se analysis" of such claims and a "rule-of-reason" analysis of tying claims. While Plaintiffs allege that Defendants' alleged tying arrangement is illegal under both a per se and rule of reason analysis, those two theories have merged in recent years. *PSI Repair Services, Inc. v. Honeywell, Inc*., 104 F.3d 811, 815 n.2 (6th Cir. 1997);*Compuware Corp. v. International Business Machines Corp*., 366 F.Supp.2d 475, 479 (E.D. Mich. 2005). The two theories differ in only one respect - the per se analysis dispenses with proof of anticompetitive effects. *Id.* "Thus, in this circuit, market power in the tying product market is an indispensable requirement under either per se or rule-of-reason analysis." *PSI,* 104 F.3d at 815 n.2.

markets. *Expert Masonry, Inc. v. Boone County, Kentucky*, 440 F.3d 336, 342 (6th Cir. 2006). Thus, with respect to each of their antitrust claims in this action, Plaintiffs must plead a viable relevant product and geographic market, and allege that Defendants have market power in that market, in order to state a valid antitrust claim.

Here, each of Plaintiffs' antitrust claims is based on the allegation that each Defendant cemetery is a separate relevant geographic market and therefore each individual cemetery has complete market power within its own cemetery to tie burial plots to monument sales and installation.

I.   **Plaintiffs' Antitrust Claims Must Be Dismissed Because Plaintiffs' Alleged Relevant Geographic Market Of Each Individual Cemetery Fails As A Matter Of Law.**

In the Joint Motion, Defendants assert that all of Plaintiffs' antitrust claims must be dismissed because Plaintiffs' alleged geographic market of each individual cemetery fails because:   A) Plaintiffs' alleged market is too narrow as a matter of law because it ignores economic reality;   and B) courts have already rejected, as a matter of law, that a single cemetery can constitute a valid relevant market for purposes of an antitrust claim based upon an allegation that property is unique and the Supreme Court has recently  rejected a presumption that "uniqueness" confers market power.

A)   **Plaintiffs' Alleged Market is Too Narrow as a Matter of Law**.

A plaintiff must show that the defendant has market power in the relevant product and geographic market to prove an antitrust violation. *Foundation for Interior Design Educ. Research,* 244 F.3d at 531.  The "relevant market" is "composed of products that have reasonable interchangeability for the purposes for which they are produced."  *Id*.; *American Council of Cert.*

9

*Podiatric Physicians & Surgeons v. American Bd. of Podiatric Surgery, Inc.*, 185 F.3d 606, 622 (6th Cir. 1999)("The relevant market includes those products or services that are reasonably interchangeable with, as well as identical to, defendant's product.").  The geographic market must correspond to the commercial realities of the industry and be economically significant. *Brown Shoe v. United States*, 370 U.S. 295, 336-37 (1962). "Thus, although the geographic market in some instances may encompass the entire Nation, under other circumstances it may be as small as a single metropolitan area." *Id.*

Defendants contend that when plaintiffs plead geographic markets that blatantly ignore economic and commercial reality, and therefore are too narrow as a matter of law, dismissal is appropriate.  Defendants note that the "Michigan Cemetery Atlas," created by the State of Michigan through the Library of Michigan, shows more than 3,800 cemeteries in Michigan and Plaintiffs do not dispute that number.  Plaintiffs, however, do not allege that any of those 3,800 cemeteries have market power in any geographic area broader than its own individual cemetery (such as a county, city or township).   Because tying arrangements only violate antitrust laws if a defendant has sufficient market power to harm competition in a relevant product and geographic market, Defendants contend that Plaintiffs have manufactured market power by alleging that there are 3,800 separate geographic markets with respect to cemetery plots in Michigan that purportedly do not compete with each other.  Defendants assert that Plaintiffs' position that consumers seeking to purchase a burial plot in Michigan have no choices and must select burial in a single cemetery is ludicrous.  Defendants note that Washtenaw county alone has almost 200 cemeteries.

Defendants contend that in alleging that each of the 3,800 cemeteries is an individual

relevant geographic market, Plaintiffs blatantly ignore reality and define the relevant market too narrowly as a matter of law.  Defendants cite a litany of cases in support of that proposition but their main[4] cases are *Double D Spotting Serv., Inc. v. Supervalu, Inc*., 136 F.3d 554, 559 (8th Cir. 1988); and *Apani S.W., Inc. v. Coca-Cola Enters., Inc*., 300 F.3d 620, 628 (5th Cir. 2002). Plaintiffs did not distinguish any of these cases.

In *Double D*, a semitrailer unloading service (Double D) brought antitrust claims against a competitor and a supermarket chain.  Double D asserted that until 1996, it had been in the business of competing with other companies to provide unloading services for over the road trucking companies that deliver goods to the Supervalu warehouse in Urbandale, Iowa.  In 1996, however, Supervalu entered into an exclusive contract granting one business (World Super Services, Inc.) the right to provide all unloading services at the Urbandale warehouse. Thereafter, Double D asserted antitrust claims.  It alleged that a tying arrangement arose because trucking companies who deliver trailers to Supervalu's Urbandale warehouse, and who want to use an unloading service, have no choice but to use World Super Services, Inc.

The district court dismissed the action for failure to state a claim.  The district court concluded that Double D's antitrust claims failed to state a claim because it failed to plead a

_____

[4]Defendants also cite and rely on the following cases:  *American Key Corp. v. Cole Nat. Corp*., 762 F.2d 1569, 1580-81 (11th Cir. 1985)("The relevant market is the area of effective competition in which competitors generally are willing to compete for the consumer potential, and not the market area of a single company."); *Flegel v. Christian Hosp. Northeast-Northwest*, 804 F.Supp. 1165, 1174 (E.D. Mo. 1992)("The courts have consistently refused to limit the geographic market to a single hospital, where there are other hospitals operating in the surrounding area."); and *Dunafon v. Delaware McDonald's Corp.*, 691 F.Supp. 1232, 1242 (W.D. Mo. 1988)(finding geographic market of land within shopping mall was too narrow as a matter of law).

11

valid relevant geographic market.  Double D had alleged that the Supervalu warehouse in
Urbandale itself was the relevant geographic market.  Noting that it is the plaintiff's burden to
define the relevant market, and that antitrust claims often rise or fall on the definition of the
relevant market, the Eight Circuit "agree[d] with the district court that, as a matter of law, this
stated geographic market is too narrow to support a claim of an antitrust violation."  *Id*. at 560.
The court explained that Supervalu's one warehouse in Urbandale does not amount to a relevant
geographic market for unloading services of this type.  "Rather, the market for unloading services
would seem to be more properly defined as including all warehouses within, at least, the entire
Des Moines, Iowa, metropolitan area, if not an even larger area."  *Id*. at 560-61.

In *Apani*, a bottled beverage seller (Apani) brought suit alleging antitrust claims after the
City of Lubbock, Texas entered into an exclusive contract with Coca Cola Enterprises, Inc.
(CCE) allowing CCE to supply all non-alcoholic beverages to facilities owned and operated by
the City.  Apani alleged that the relevant geographic market was twenty-seven city-owned
facilities within the City of Lubbock.  The district court dismissed all of Apani's antitrust claims
for failure to state a claim, concluding that Apani's geographic market definition was legally
insufficient as a matter of law.

In affirming that ruling, the Fifth Circuit noted that whether a relevant market has been
identified is usually a question of fact, but that in some circumstances, the issue may be
determined as a matter of law.  The court explained that:

> Where the plaintiff fails to define its proposed relevant market with reference to
> the rule of reasonable interchangeability and cross-elasticity of demand, or alleges
> a proposed relevant market that clearly does not encompass all interchangeable
> substitute products even when all factual inferences are granted in plaintiff's
> favor, the relevant market is legally insufficient, and a motion to dismiss may be

granted.

*Id*. at 628.  The appellate court noted that the district court "found that Apani's relevant geographic market definition did not comport with the commercial realities of the industry.  It stated that, at the very least, the commercial realities of the industry suggest that the relevant geographic market must include the entire city of Lubbock."  *Id.* at 629.  The appellate court agreed that the relevant geographic market alleged by Apani was insufficient as a matter of law, explaining that:

> Here, Apani has simply attempted to artificially narrow a broader economic market, the City of Lubbock, to specific venues.  Such pleading maneuvers may not be used for the purpose of creating a fictitious market.  Thus, we find Apani's geographic market definition insufficient as a matter of law.

*Id.*

The Court believes that a Sixth Circuit case, *Foundation for Interior Design Education Research, supra,* is also instructive.  In that case, an accrediting foundation for interior design education programs brought an action seeking a declaratory judgment that it did not violate the rights of a college in denying accreditation to the college's interior design program.  The college brought several counterclaims, including antitrust claims.

The district court granted the foundation's motion to dismiss each of the college's counterclaims for failure to state a claim, including the antitrust claims.  The district court found that the college did not properly allege that the foundation has substantial market power in the relevant market and therefore did not state a claim for antitrust violations.  The college appealed.  In affirming the district court's dismissal of the antitrust claims, the Sixth Circuit noted that the college alleged in its complaint that the foundation "abused its market power in the 'market for

13

accredited interior design program' by restricting output and suppressing competition." *Id*. at

531.  It further noted that:

> The district court rejected the College's market definition, finding that non-
> accredited programs for the study of interior design are interchangeable with
> accredited programs, and that the proper market definition includes all interior
> design programs.  The district court then found that the College did not allege that
> the Foundation enjoyed substantial market power in the market of all interior
> design programs.

*Id.*  In affirming the district court's ruling, the Sixth Circuit acknowledged that market definition

is typically a fact-based analysis that generally requires discovery, but that in the case presented

"definition of the relevant market requires relatively little factual analysis.  Based on a review of

the record, we find that the College competes with schools that have non-accredited interior

design programs and with schools that have accredited programs.  Thus, the relevant market in

this case includes all interior design programs.  We find that the College did not provide a

sufficient factual predicate to support its allegations that the Foundation enjoys market power in

the market of all interior design programs." *Id.*

Like the alleged geographic markets in *Double D, Apani* and *Foundation for Interior

Design Education Research,* this is a case where the definition of the geographic market requires

very little factual analysis.   The relevant market must include those products or services that are

reasonably interchangeable with Defendants' product.  Here, however, Plaintiffs allege a product

and geographic market that clearly does not encompass all interchangeable substitute products

even when all factual inferences are granted in Plaintiffs' favor.  In fact, Plaintiffs' complaint

contains no allegations whatsoever relating to the rule of interchangeability or to substitute

products.  *See NicSand, Inc. v. 3M Co.*, 457 F.3d 534, 546-47 (6th Cir. August 8, 2006)(A

14

plaintiff must allege a product market with sufficient references to substitute products); *see also Queen City Pizza, Inc. v. Domino's Pizza, Inc*., 124 F.3d 430 (3d Cir. 1997).  To accept Plaintiffs' alleged geographic market would be to conclude that there are *no interchangeable substitute products* for a given Defendant's burial plots (*i.e.* that each Defendant cemetery competes with no other cemetery in Michigan).  Such a conclusion blatantly ignores economic and commercial reality and the facts in the record before the Court.

Plaintiffs acknowledge that there are a number of factors that influence an individual's choice of a cemetery, including location, and that there are more than 3,800 cemeteries in Michigan.  While a given Defendant may not compete with every other cemetery in Michigan, it undoubtedly competes with at least the other cemeteries in the city or county in which that cemetery is located.  Thus, the relevant geographic market for each Defendant in this case would include, at least, all cemeteries in the city or county in which that Defendant is located.

Accordingly, the Court concludes that Plaintiffs' alleged relevant geographic market is too narrow as a matter of law.

**B)   In Addition, Courts Have Already Rejected, As A Matter Of Law, That A Single Cemetery Can Constitute A Valid Relevant Market Based On An Allegation That Property Is Unique And The Supreme Court Has Recently Rejected Presumptions That Uniqueness Confers Market Power.**

The existence of market power is ordinarily established by the seller's possession of a predominant share of the market.  *PSI*, 104 F.3d at 817.  Rather than allege that any Defendant cemetery has market power by virtue of its share of the tying market, however, Plaintiffs claim that they do not need to allege any Defendant's share of the tying market because cemetery property is a unique product that gives cemeteries market power by virtue of their uniqueness.

15

That same argument has already been rejected by several courts. *See e.g.*, *Baxley DeLamar Monuments, Inc. v. American Cemetery Ass'n*, 938 F.2d 846, 853 (8th Cir. 1991); *Florida Monument Builders v. All Faiths Memorial Gardens*, 605 F.Supp. 1320 (S.D. Fla. 1984); and *Silkworth v. Cedar Hill Cemetery, Inc.*, 1993 WL 122104 (Md. App. 1993).

Despite the apparent high volume of antitrust actions filed by monument dealers against cemeteries over the past twenty years, Plaintiffs are unable to cite a single case wherein a court has concluded that a bare allegation of market power based on the uniqueness of cemetery property, with no allegations respecting a defendant's share of the tying market, is sufficient to state an antitrust claim.

In addition,  in a recent case, *Illinois Tool Works, Inc. v. Independent Ink, Inc.*, 2006 WL 468729 (March 1, 2006), the Supreme Court confirmed that market power may not be presumed in a tying case, holding that "in all cases involving a tying arrangement, the plaintiff must prove that the defendant has market power in the tying product." *Id*. at *12.  The Court agrees that the reasoning in that case makes it clear that presumptions, whether based on the uniqueness of a patent or the uniqueness of land, cannot support a valid antitrust claim.  The Court therefore concludes that Plaintiffs' allegation of market power based upon the uniqueness of land is insufficient as a matter of law.

At the October 12, 2006 hearing, counsel for Plaintiff acknowledged that, following *Illinois Tool*, allegations that a cemetery has market power simply by virtue of the fact that it is land are insufficient to support an antitrust claim.  Aside from the allegation that land is unique, however, the only other allegation in the complaint to support a theory of market power based on the purported uniqueness of each individual cemetery is the allegation that "once

16

a grave is purchased the owner or his or her family who wish to memorialize the deceased must install the memorial or monument in that cemetery." (Compl. at ¶ 28).

Plaintiffs assert that even if there is significant competition in the tying market, that competition, and each Defendant's share of that market, are "irrelevant" for purposes of Plaintiffs' antitrust claims because Plaintiffs are focusing on the competition in the tied product market. That argument ignores the unequivocal requirement that a plaintiff allege and prove power in the *tying product market*. If there is significant competition in the tying product market, then absent some "lock-in" theory,[5] which Plaintiffs expressly disavowed[6] in both their briefs and at oral argument, a tying arrangement could not have an anticompetitive effect (*i.e.*, If there is significant competition in the flour market, a seller of flour that insists its buyers take some sugar as well would gain nothing.)

For all of these reasons, the Court concludes that Plaintiffs' alleged relevant geographic

_____

[5]The nature of a "Kodak-type" or "lock in" theory is that market power to support an antitrust claim is argued to exist because, *after* a customer buys one product he is then "locked in" by the seller to buy another product by virtue of the sellers' rules. In *PSI* for example, the plaintiff argued that there was an illegal tie between Honeywell equipment and the Honeywell repair parts for that equipment in the aftermarket. Honeywell had a restrictive policy requiring equipment owners to buy certain replacement parts from Honeywell (*i.e.* Honeywell would not sell those parts to outside repair services and would not let its manufacturer of those parts sell them to anyone outside Honeywell either). It was therefore claimed that after a sale of the equipment to a consumer, that consumer was "locked in" to buying the repair parts (the tied product) from Honeywell.

[6]Even if Plaintiffs contended that they were relying on a lock-in theory, Plaintiffs have not sufficiently pled a "lock-in" theory in the complaint under *PSI* and *Little Caesar Enterprises, Inc.*, which hold that an alleged lock-in theory fails unless the plaintiff also alleges that: 1) the defendant changed its rules after the sale was made, or 2) concealed its rules from its customers. *PSI Repair Services, Inc. v. Honeywell, Inc.*, 104 F.3d 811 (6th Cir. 1997); *Little Caesar Enterprises, Inc. v. Smith*, 34 F.Supp.2d 459 (E.D. Mich. 1998). No such allegations are contained in Plaintiffs' Complaint.

17

market of each individual cemetery fails as a matter of law.

## II.     Plaintiffs' Conspiracy Claims Must Also Be Dismissed On Additional Grounds.

As Plaintiffs' counsel acknowledged during oral argument, the above conclusion mandates the dismissal of all of Plaintiffs' antitrust claims.  Nevertheless, the Court concludes that Plaintiffs' conspiracy claims must also be dismissed on some additional grounds raised by Defendants.

### A.     Plaintiffs Have Failed To Plead Sufficient Facts Establishing A Conspiracy.

As an additional ground for dismissal of Plaintiffs' conspiracy claims, Defendants assert that the conspiracy claims must be dismissed because the complaint contains no allegations that Defendants engaged in any specific conduct in violation of antitrust laws.

As the individual cemetery defendants each note, with the exception of allegations as to their ownership, location and/or state of incorporation, there are no specific factual allegations that relate to them.  That is, Plaintiffs' complaint is devoid of any factual allegations that any cemetery defendant entered into an agreement with any other defendant.  The complaint is also devoid of any specific factual allegations that any cemetery defendant engaged in any wrongful conduct.  Rather, the complaint contains a "laundry list" of general allegations, without any references to conduct by any specific cemetery defendant.

While the Court is mindful of the minimal pleading requirements of FED. R. CIV. P. 8, Plaintiffs cannot escape their burden of alleging that each defendant participated in or agreed to join the conspiracy by using the term "defendants" to apply to numerous parties without any specific allegations as to any individual cemetery defendant.  *See e.g., Jung v. Association of American Medical Colleges*, 300 F.Supp.2d 119, 164 (D.D.C. 2004).  The Court  concludes that

18

Plaintiffs have filed to plead sufficient facts in the complaint to establish a conspiracy.

      B.    Plaintiffs' Postulated Conspiracy Should Be Rejected Because It Is Economically Implausible.

      Defendants also assert that the conspiracy claims should be dismissed because the postulated conspiracy makes no economic sense.  Defendants rely on *Lifeline Ltd. No. II v. Connecticut General Life Ins. Co.*, 821 F.Supp. 1201 (E.D. Mich. 1992) to support this argument. In that case, the trial court granted a motion to dismiss an antitrust claim.  One of the reasons the court dismissed the challenged conspiracy count was because the alleged conspiracy was "practically and economically implausible."  *Id*. at 1205.

      Defendants assert that according to Plaintiffs' posited theory, no cemetery in Michigan competes with any other cemetery because each has it own relevant geographic market over which it has monopoly power.  Defendants assert that if the cemeteries do not compete with each other, then no agreement or conspiracy to restrain trade would be necessary.  In other words, if the cemeteries do not compete with each other, there is no economic incentive for them to combine with each other to force out independent sellers of monuments because such sellers could already be excluded by unilateral decision of each cemetery.  The Court agrees that Plaintiffs' conspiracy claims are practically and economically implausible.

**III.   The Court Declines To Exercise Supplemental Jurisdiction Over Plaintiffs' Remaining State Law Claims.**

      As set forth above, the Court is dismissing Plaintiffs' federal antitrust claims.  Thus, the only claims that remain are Plaintiffs' state law claims, brought under Michigan's Prepaid Funeral and Cemetery Sales Act, M.C.L. §328.225.   The applicable statute regarding supplemental jurisdiction, 28 U.S.C. §1367, provides, in pertinent part, that district courts may

decline to exercise supplemental jurisdiction over a claim when:

> 1) the claim raises a novel or complex issue of State law;
> 2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction;
> 3) the district court has dismissed all claims over which it has original jurisdiction, or
> 4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. §1367(c).

_____In a recent decision the Sixth Circuit addressed the issue of supplemental jurisdiction (also referred to as pendent jurisdiction) and reversed a district court's decision to exercise supplemental jurisdiction following dismissal of all federal claims in the case. *Moon v. Harrison Piping Supply, et al.*, __ F.3d __ (6th Cir. Sept. 28, 2006). In that case the Sixth Circuit noted that "a federal court that has dismissed a plaintiff's federal-law claims should not ordinarily reach the plaintiff's state-law claims." *Id.* (citing *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966)). Supplemental jurisdiction should be exercised only in cases where the interests of judicial economy and the avoidance of multiplicity of litigation outweigh concerns over needlessly deciding state law issues. *Id.*

This is not such a case. Moreover, there are no published opinions from Michigan courts discussing the statute that forms the basis of Plaintiffs' state law claims. Plaintiffs' claims will therefore likely raises novel issues under the statute. The Court therefore declines to exercise supplemental jurisdiction over Plaintiffs' state law claims.

## CONCLUSION & ORDER

For the reasons set forth above, **IT IS ORDERED** that Defendants' Motions to Dismiss are hereby **GRANTED** and Plaintiffs' complaint is **DISMISSED** in its entirety.

S/Sean F. Cox
Sean F. Cox
United States District Judge

Dated: October 27, 2006

I hereby certify that a copy of the foregoing document was served upon counsel of record on October 27, 2006, by electronic and/or ordinary mail.

S/Jennifer Hernandez
Case Manager

21